**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 9:17-cr-80102-ROSENBERG**

UNITED STATES OF AMERICA,

    v.

PHILIP ANTICO,

    Defendant.

_____/

**ORDER DENYING SERGEANT ANTICO'S MOTION FOR**
**POST-VERDICT JUROR INTERVIEW REGARDING JUROR MISCONDUCT**

This Cause is before the Court on Defendant Philip Antico's Motion for Post-Verdict Juror Interview Regarding Juror Misconduct. *See* DE 242. The Government responded, DE 244, and Antico replied, DE 251. The Court has reviewed the filings. The Court hereby denies Antico's Motion for Post-Verdict Juror Interview Regarding Juror Misconduct.

**I.**    **FACTS**

Following a jury trial, Antico was convicted of one count of obstruction of justice and acquitted of two counts of falsification of records. *See* DE 188. On January 19, 2018, a juror from Antico's trial contacted Antico's attorney's office. DE 242 at 1. The juror then emailed Antico's attorney's secretary expressing her concerns about the jury deliberations during Antico's trial. *Id.* The letter was filed with the Court. *See* DE 239-1. Antico now moves for the Court to conduct an interview of the juror to determine if further investigation into jury misconduct is necessary. DE 242.

## II.    <u>LEGAL STANDARD</u>

"A general rule has evolved to give substantial protection to verdict finality and to assure jurors that, once their verdict has been entered, it will not later be called into question based on the comments or conclusion they expressed during deliberations. This principle, itself centuries old, is often referred to as the no-impeachment rule." *Pena-Rodriguez v. Colorado*, 137 S.Ct. 855, 861 (2017). The no-impeachment rule was adopted in the Federal Rules of Evidence at Rule 606(b). It reads:

> **(b) During an Inquiry into the Validity of a Verdict or Indictment.**
> **(1)** *Prohibited Testimony or Other Evidence.* During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.
> **(2)** *Exceptions.* A juror may testify about whether:
> **(A)** extraneous prejudicial information was improperly brought to the jury's attention;
> **(B)** an outside influence was improperly brought to bear on any juror; or
> **(C)** a mistake was made in entering the verdict on the verdict form.

An inquiry into jury deliberations only may occur in the "gravest and most important cases." *McDonald v. Pless*, 238 U.S. 264, 269 (1915). The Supreme Court has stated that the no-impeachment rule must be strong so as to protect the jury deliberations from intrusive inquiry and to ensure finality; the Supreme Court has also noted that there are significant safeguards, including voir dire and the juror's ability to report any misconduct prior to the deliberations, that protect the fairness of the trial process. *Pena-Rodriguez*, 137 S.Ct. at 866.

"District courts are subject to very stringent limitations on their authority to question jurors about their deliberations, and to use one or more juror's testimony to impeach the verdict of all." *United States v. Foster*, 878 F.3d 1297, 1309 (11th Cir. 2018) (quoting *United States v.*

*Siegelman*, 640 F.3d 1159, 1185 (11th Cir. 2001)). The Eleventh Circuit has explained that "[t]he duty to investigate arises only when the party alleging misconduct makes an adequate showing of extrinsic influence to overcome the presumption of jury impartiality. To justify a post-trial hearing involving the trial's jurors, the defendant must do more than speculate; he must show clear, strong, substantial and incontrovertible . . . evidence that a specific, nonspeculative impropriety has occurred." *United States v. Cuthel*, 903 F.2d 1381, 1383 (11th Cir. 1990).

## III.   <u>ANALYSIS</u>

Antico's motion argues that the juror's letter raises three reasons why the Court should permit an interview of the juror. He points to allegations of (1) consideration of extraneous information and predeliberative conduct by several jurors; (2) bullying by jurors; (3) bias against law enforcement officers by at least one juror. DE 251 at 2. The Court addresses each allegation in turn.

### a.   <u>Allegations of Consideration of Extraneous Information and Predeliberative Conduct</u>

Antico argues that the juror's letter raises a concern that some jurors considered extraneous information and that there was predeliberative conduct by the jurors. In her letter, the juror notes that "[t]here were two jurors, and older genetlemen and an older lady who began with Guilty throughout the board before we even started our discussion. . . . Their reasoning as to why was because someone should be held accountable for the Officers in the video which was shown numerous times. They also mentioned that they didn't think that Sergeant Antico was Guilty, but they need to have someone responsible." DE 239-1.

Antico has failed to meet his burden to show that the jury considered extraneous information or that the jurors acted inappropriately before deliberations began. The Court notes

that prior to Antico's trial, there was media attention around the trial of his three fellow officers, two of whom were acquitted on all counts. To combat concerns raised by this media attention, the Court asked the potential jurors during voir dire if they knew anything about the case; any juror who indicated that he or she may know something about the case was subject to additional inquiry by the Court outside the hearing of the other jurors and also was subject to unlimited questioning by counsel for both parties.[1] At the end of the first day of jury selection, the Court read the following instruction to the venire:

> Let me read you this instruction. You shouldn't talk about the case with each other until you begin your deliberations. You want to hear all of the evidence, the lawyers' closing arguments and my instructions on the law. You should keep an open mind until the end of the trial. Premature discussions might lead to a premature decision.
>
> In this age of technology, I want to emphasize, in addition to not talking face-to-face, you must not communicate with anyone about the case by any other means, this includes emails, text messages, internet, including social network, Facebook, My Space and Twitter. You should not search online about any information about the case, the parties, or the law. Don't read or listen to the news about this case, visit any places related to this case or research any fact, law or issue about this case. The law forbids you to talk to anyone about the case.
>
> It is very important you understand why these rules exist and why they are so important. You must base your decision only on the testimony and other evidence presented in the courtroom. It is not fair to the parties if you base your decision on any information you acquire outside the courtroom. For example, the law often uses phrases in a certain way and it is important any definitions you hear come from me and not any other source. Only you jurors can find a verdict in this case. The law sees only you are fair and only you promised to be fair and no one else is qualified.
>
> Now, once the jury panel is selected, the idea is that the same rules and same instructions apply.

---

[1] The Court began jury selection by reading an agreed-upon statement of the case and saying "is there anybody with any knowledge of the case based on the facts that I read?" Excerpts from Antico Trial, Nov. 8, 2017 at 1. After certain individuals indicated that they had knowledge of the case, the Court requested that they stay to be questioned about their knowledge of the case. *See id.* ("[T]here are certain people that I would like to speak with individually based on the fact that you [indicated that you had knowledge about the case.]").

Excerpts from Antico Trial, Nov. 8, 2017, at 11–12. The parties were afforded the right to raise any cause challenges and were afforded their preemptory challenges. No party requested additional preemptory challenges. The jury, as selected, was accepted by both parties. Once the jury was selected, the Court again gave an instruction reminding the jury to not view any media.[2] In addition, the Court routinely instructed the jurors in Antico's trial each time they were on break and left for the day that they were not to view any media. The juror's vague allegations that some jurors made up their minds quickly or felt that someone needed to be held accountable is not clear, strong, substantial and incontrovertible evidence that a specific, nonspeculative impropriety occurred during the deliberations. *See Cuthel*, 903 F.2d at 1383.

b.  Allegations of Bias Against Police Officers

Antico argues that the Court should allow an interview of the juror because she stated in her letter that another juror insinuated that he did not like police officers. DE 242 at 2. The Supreme Court has noted that "[t]here may be cases of juror bias so extreme that, almost by definition, the jury trial right has been abridged. If and when such a case arises, the Court can

---

[2] The Court said:

> I think it is easier to say don't look at any media coverage until we see you on Monday, but that is unrealistic or unfair, I would suppose, but I will say this: If you are not compelled to view local media or read local media, I prefer you not because it runs no risk, but if you are sitting on Saturday night and that is what you do, watch the 6:00 o'clock news or 6:30 news, if there is anything you see that sounds like this case, even though you may be completely wrong, turn the TV off or walk out of the room. If you go tomorrow morning and take the paper and open it up and you see something, close it.
>
> Again, I think I have explained it, it is not fair, that is not evidence. I won't know what you have heard, they won't know. How are they going to address that? How is that fair to the parties if you read something so it is now in the back of your mind and may not even be an admissible thing?
>
> We have rules of evidence, I sustain some, overrule some, and that is because certain things are allowed in and certain things aren't based on the rules of evidence.

Excerpts from Antico Trial, Nov. 9, 2017, at 15.

consider whether the usual safeguards are or are not sufficient to protect the integrity of the process." *Warger v. Shauers*, 135 S.Ct. 521, 529 n.3 (2014). In *Warger*, the Supreme Court rejected a motion for a new trial in a civil case based on foreperson's alleged pro-defendant bias. *Id.* at 525.

To date, the only instance where the Supreme Court has found that juror bias was so extreme as to necessitate violating the no-impeachment rule was "where a juror ma[de] a clear statement that indicate[d] he or she relied on racial stereotypes or animus to convict a criminal defendant." *Pena-Rodriguez*, 137 S.Ct. at 869. In reaching this decision, the Supreme Court noted the unique historical role that racial discrimination plays in the history of the United States and in the criminal justice system. *See id.* at 868 ("The unmistakable principle underlying these precedents is that discrimination on the basis of race, odious in all aspects, is especially pernicious in the administration of justice.") (citations omitted). The Supreme Court noted that in other instances of alleged jury misconduct, the no impeachment rule holds strong and the Court should not inquire into the juror's deliberations. *See id.* ("To attempt to rid the jury of every irregularity of this sort would be to expose it to unrelenting scrutiny. It is not at all clear . . . that the jury system could survive such efforts to perfect it.") (citations omitted).

The juror's allegation that another juror had a bias against police officers does not warrant an exception to the no impeachment rule. The Court notes that each potential juror filled out a questionnaire that included a question as to whether the juror or a close family member or friend ever worked for a law enforcement agency and whether there was anything in the juror's background or personal feelings which might affect the juror's ability to be fair and impartial to both sides. The Court followed up with each juror as to the juror's answers in the questionnaire and the parties, through counsel, were given the opportunity to ask questions of the jurors. The

parties had copies of the completed questionnaires. Although any bias in the criminal system should be guarded against, every allegation of bias does not warrant the Court's investigation and does not require violating the no impeachment rule. *See, e.g.,* Warger, 135 S.Ct. at 525. Allegations of bias against police officers do not meet the narrow exception to the no impeachment rule that the Supreme Court declared for allegations of racial bias. *See Pena-Rodriguez*, 137 S.Ct. at 869. To find otherwise would open the jury system to constant scrutiny. *See id.*

      c.   Allegations of Bullying

Antico argues that the Court should allow an interview of the juror because she alleges that she felt bullied into convicting Antico. In *Foster*, a juror sent a note stating "that the other jurors overwhelmingly bullied [her] into focusing on only the [government's] evidence, guided [her] into disregarding all evidence that supported Foster's case, and used their age and occupational eliteness as swaying tactics during deliberations." *Foster*, 878 F.3d at 1310 (alterations in original) (citation omitted). The Eleventh Circuit found that these allegations were insufficient to violate the no impeachment rule because "the juror's letter describes nothing more than typical features of jury deliberations." *Id.* Like in *Foster*, the juror's statement here that she felt bullied into convicting is insufficient to warrant an investigation into any juror misconduct.

## IV.  **CONCLUSION**

Based on the foregoing, it is hereby ordered and adjudged that Antico's Motion for Post-Verdict Juror Interview Regarding Juror Misconduct [DE 242] is **DENIED**.

**DONE AND ORDERED** in Chambers in Fort Pierce, Florida this 1st day of February, 2018.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to: All counsel of record via CM/ECF